### IN THE UNITED STATE DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. TARIN KEENER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) Case No. 18-cv-490-JED-FHM | |
| | ) | Attorney Lien Claimed |
| 1. SHADOW MOUNTAIN BEHAVIORAL HEALTH SYSTEM, LLC | ) | Jury Trial Demanded |
| 2. UNIVERSAL HEALTH SERVICES, INC., | ) | |
| 3. UHS OF DELAWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff Tarin Keener submits this Complaint against Defendants Shadow Mountain Behavioral Health System LLC, Universal Health Services, Inc., and UHS of Delaware, Inc. (collectively the "Defendants").

### PARTIES, JURISDICTION, AND VENUE

1. This action arises under the Americans with Disabilities Act of 1990 and amendments thereto, the Federal Family and Medical Leave Act of 1993, and Oklahoma law.

2. Plaintiff is, and was at all times relevant to this action, a resident of Claremore, Rogers County, Oklahoma.

3. Defendant Shadow Mountain Behavioral Health System is a foreign limited liability company authorized to do business in the State of Oklahoma.

4. Defendant UHS of Delaware, Inc. is a foreign for-profit corporation authorized to do business in the State of Oklahoma.

5. Defendant Universal Health Services, Inc. is a foreign for-profit corporation authorized to do business in the State of Oklahoma.

1

6. Upon information and belief, Shadow Mountain Behavioral Health System is a wholly owned subsidiary of, and under the control of, Defendants Universal Health Services, Inc. and UHS of Delaware, Inc.

7. Upon information and belief, during the time Plaintiff was employed by Defendants, Mike Kistler was the Chief Executive Officer of Shadow Mountain Behavioral Health System and an employee of, and paid by, Universal Health Services, Inc. and/or UHS of Delaware, Inc. under the control and direction of Universal Health Services and/or UHS of Delaware, Inc.'s Regional Vice President, Sharon Worsham.

8. Shadow Mountain Hospital and Behavioral Health Assessment Center is a facility owned and operated by Defendants and is known as Defendants' "Hospital Campus."

9. At all times relevant to this cause of action, Plaintiff was employed by Defendants to work at the Hospital Campus.

10. Plaintiff has exhausted her statutorily required administrative remedies by submitting a Form 5 Charge of Discrimination against all Defendants on December 27, 2017 via facsimile, e-mail, and overnight mail.  More specifically, Plaintiff submitted a verified Intake Questionnaire with addenda to the EEOC for her claims against Defendants Shadow Mountain Behavioral Health System and Universal Health Services on August 2, 2017.  Plaintiff submitted a verified Intake Questionnaire with addenda to the EEOC for her claims against Defendant UHS of Delaware, Inc. on December 20, 2017.  The information provided to the EEOC in her verified Intake Questionnaires was sufficiently detailed to constitute a Charge of Discrimination pursuant to 29 CFR § 1601.12 and *Federal Express Corp. v. Holowecki*, 522 U.S. 389 (2008).

11. On Friday, June 22, 2018, the EEOC issued Plaintiff a Notice of Suit Rights against Defendant Shadow Mountain Behavioral Health System, which was received by Plaintiff on Monday, June 25, 2018.

12. On Friday, June 22, 2018, the EEOC issued Plaintiff a Notice of Suit Rights against Defendants UHS of Delaware, Inc. and Universal Health Services, Inc., which was received by Plaintiff on Monday, June 25, 2018.

## OPERATIVE FACTS

13. Plaintiff incorporates her allegations in Paragraphs 1-12, above, as if set forth fully herein.

14. Plaintiff was hired on or about June 10, 2014 by Defendants as a Registered Nurse to work at Defendants' Hospital Campus in Tulsa, Oklahoma.

15. At all relevant times, including during the time Plaintiff applied to work at the Hospital Campus, Plaintiff was a disabled veteran (rated at over 30% disabled) due to chronic back and abdomen conditions related to her time in the United States Army, and represented such to Defendants.

16. As a result of Plaintiff's disability, Plaintiff required reasonable accommodations, including but not limited to intermittent FMLA leave and intermittent non-FMLA leave.

17. As a result of Plaintiff's disability, and Plaintiff's use of and requests for reasonable accommodations, Defendants targeted Plaintiff and intentionally harassed Plaintiff.

18. Beginning in July 2016, Defendants began harassing Plaintiff about her use of FMLA benefits and Plaintiff's attendance record.

19. Beginning in July 2016, Plaintiff's supervisor, Candice Rush, regularly made public complaints about Plaintiff's use of FMLA leave and absences, and how she was being held hostage by Plaintiff's use of FMLA leave.

20. Beginning in July 2016, Plaintiff's supervisor, Candice Rush, began disclosing to Plaintiff's co-workers the nature of Plaintiff's medical conditions and her classification as a disabled veteran.

21. Beginning in July 2016, Defendants began threatening Plaintiff with termination as a result of her attendance record, which included but is not limited to Defendants using Plaintiff's FMLA-approved time off work as a basis to threaten Plaintiff with termination, Defendants fabricating alleged days off work by Plaintiff to threaten Plaintiff with termination, and Defendants charging Plaintiff with unexcused time off work when such time off work was, under Defendant's leave guidelines, considered excused time off work to threaten Plaintiff with termination.

22. Plaintiff's supervisor's and Defendant's upper management's public complaints about Plaintiff's use of FMLA benefits and leave schedule became daily occurrences up until the point of Plaintiff's termination.

23. Plaintiff's supervisor's and Defendant's upper management's public complaints about Plaintiff's use of FMLA benefits and leave schedule resulted in the disclosure to Plaintiff's co-worker's of Plaintiff's disabilities, which in turn led to regularly occurring derogatory comments by Plaintiff's co-workers about Plaintiff being a disabled veteran.

24. As a result of the harassment to which Plaintiff was subjected, Plaintiff regularly became physically sick, vomiting as Plaintiff's shift approached and during Plaintiff's shift.

25. Habitual absences and tardiness were regular occurrences for employees at the Hospital Campus, but Defendants did not threaten Plaintiff's non-disabled coworkers with termination and did not harass Plaintiff's non-disabled co-workers about their leave schedules.

26. The harassment to which Plaintiff was subjected to on a daily basis was objectively hostile and a result of Plaintiff's disabilities and use of reasonable accommodations.

27. As a result of Plaintiff's disabilities and use of reasonable accommodations, Defendants imposed upon Plaintiff additional requirements for securing excused time off work that Plaintiff's non-disabled co-workers were not subjected to. Defendants also imposed upon Plaintiff additional requirements for employment that were not imposed upon any of Plaintiff's non-disabled co-workers, such as requiring Plaintiff to call in at 11:00am before her night shift to confirm she would be showing up for work, despite such time being the time she would normally be sleeping.

28. Approximately two to three weeks before Plaintiff's employment was terminated on March 3, 2017, Plaintiff submitted three complaints to the UHS Alert Line complaining of the hostile work environment she was being subjected to, complaining of being targeted as a result of being a disabled veteran, and complaining of the Defendants' interference with Plaintiff's FMLA and accommodation rights.

29. Approximately one week after submitting her three complaints to the UHS Alert Line, Plaintiff received a call from a staff member of Defendants' "Riverside Campus" in Tulsa, stating Mike Kistler wanted the staff member to discuss with Plaintiff about Plaintiff's complaints. At that time, Plaintiff discussed her complaints with the Riverside Campus staff member.

30. On March 3, 2017, approximately one to two weeks after Plaintiff discussed her complaints with the Riverside Campus staff member, Plaintiff's employment with Defendants was terminated.

## **DISABILITY DISCRIMINATION**

31. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-30, above, as if set forth fully herein.

32. Plaintiff is protected under state and federal law from employment discrimination because of her disabilities and is entitled to reasonable accommodations because of her disabilities.

33. Plaintiff's disabilities were motivating factors for Defendants' adverse treatment of Plaintiff, including being subjected to a hostile work environment, being discharged, and being retaliated against.

## **FMLA INTERFERENCE**

34. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-33, above, as if set forth fully herein.

35. At all times during Plaintiff's employment, Plaintiff was entitled to benefits under the Family and Medical Leave Act of 1993 and amendments thereto.

36. Defendants' actions materially interfered with, and were calculated to discourage and limit, Plaintiff's use of and entitlement to FMLA benefits.

## **RETALIATION**

37. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-36, above,

as if set forth fully herein.

38. As a result of reporting the hostile work environment to which Plaintiff was subjected to, as a result of Plaintiff taking and requesting FMLA leave, and as a result of Plaintiff requesting leave accommodations to accommodate Plaintiff's disabilities, Defendants unlawfully terminated Plaintiff's employment.

## DAMAGES

39. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-38, above, as if set forth fully herein.

40. Defendants' actions were intentional, willful, wanton, and done with a reckless indifference to Plaintiff's rights.

41. As a result of Defendants' intentional, willful, wanton, and reckless conduct, Plaintiff suffered damages in the form of lost wages and benefits, lost future wages, loss of dignity, anxiety, emotional distress, humiliation, worry, loss of enjoyment of life, and other pecuniary losses.

**WHEREFORE,** Plaintiff requests the Court enter judgment against all Defendants and award Plaintiff damages in excess of $75,000 for: lost wages and benefits; future wages; all compensatory and consequential damages, including but not limited to loss of dignity, emotional distress, humiliation, anxiety, worry, and loss of enjoyment of life; punitive damages; pre- and post-judgment interest; attorneys' fees; and all other relief the Court deems just and equitable.

Respectfully submitted,

*/s/Alexander J. Sisemore*
Paula J. Quillin, OBA #7368
Jeremy K. Ward, OBA #21400

Alexander J. Sisemore, OBA #31225
Franden | Farris | Quillin | Goodnight + Roberts
2 W. 2nd St., Suite 900
Tulsa, OK 74103
918-583-7129 Phone
918-583-3814 Facsimile
***Attorneys for Plaintiff***
